**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
:
JAY BONANZA BRILEY, :
: Civ. Action No. 17-1750 (RMB)
Petitioner, :
:
v. : **OPINION**
:
:
MR. ORTIZ, Warden, :
FCI Fort Dix, :
:
Respondent,[1] :
_____:

**BUMB**, District Judge

Petitioner, Jay Bonanza Briley, presently incarcerated in FCI Fort Dix, in Fort Dix, New Jersey, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, on March 15, 2017, seeking immediate release to home confinement under the Second Chance Act, and money damages. (Pet., ECF No. 1.) Petitioner has established his financial eligibility for IFP status, and his IFP application (ECF No. 1-4) will be granted. Rule 4 of the Rules Governing Section 2254 Cases in the United States

---

[1] The proper respondent to a petition under 28 U.S.C. § 2241 is the petitioner's immediate custodian, in this case, Warden Ortiz. Rumsfeld v. Padilla, 542 U.S. 426, 435 (2004). Therefore, the Court terminates Mary R. Farashahi, Chief U.S. Probation Officer, as a respondent to this petition.

District Courts, applicable to 28 U.S.C. § 2241 through Rule 1, scope of the rules, provides, in relevant part:

> The judge must promptly examine [the petition]. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

For the reasons discussed below, the Court will dismiss the petition.

I.  BACKGROUND

Petitioner filed this action as a petition for writ of habeas corpus under 28 U.S.C. § 2241. (Pet., ¶11.) Petitioner, however, also asserts jurisdiction under 42 U.S.C. § 1983, and 5 U.S.C. § 552a. (Id., ¶¶12, 33.) Petitioner seeks immediate release in order to participate in a veteran's reentry program. (Id., ¶¶35-36.)

Petitioner alleges the following facts in support of his petition for habeas relief. Petitioner's Inmate File contains an inaccurate Presentence Report ("PSR"). (Pet., ¶2.) The alleged inaccuracies in the PSR are the medical conclusions that the police officers whom Petitioner assaulted suffered serious bodily injury as a result. (Id., ¶2(A), (B)). Petitioner submitted evidence suggesting the officers suffered preexisting

2

conditions, and Petitioner did not cause the serious injuries alleged. (Id.)

On January 15, 2015, Petitioner asked Case Manager Bagley to submit evidence [presumably to the U.S. Probation Office] of his inaccurate PSR. (Pet., ¶20.) In November 2015, Petitioner was transferred to FCI Fort Dix, based on a "bogus alleged accusation and threat, the bogus information was affirmed in SIS Investigation Report." (Id., ¶24.) On November 19, 2015, Petitioner notified his new case manager, Mr. Olsen, of his erroneous PSR in his Case File. (Id., ¶25.)

Petitioner contends Olsen violated Bureau of Prisons ("BOP") Program Statement 5800.17(11)(c)[2] "by not instructing the

---

[2] Available at BOP.gov/policy. PS 5800.17(11)(c) provides, in pertinent part:

> For example, if an inmate challenges information in the PSR, staff instruct the inmate to prepare a written challenge, which staff then forward to the appropriate U.S. Probation Office (USPO). USPO procedures, however, do not allow changes or addendums to be made to the Presentence Investigation Report after sentencing, since it is a court document.
>
> If the USPO subsequently reports that the challenged information, or some part thereof, is not accurate, staff attach the inmate's inquiry and the USPO response to the challenged document. Staff file this information in the applicable section of the Inmate Central File, and also make a notation on the Inmate Activity Record (BP-A0381) to ensure that future decisions affecting the inmate are not based on discredited information.

3

Plaintiff to challenge the inaccuracies of his Pre Sentence [Report]," and not sending documentation to a U.S. Probation Officer to correct the PSR. (Id., ¶26.)

At Petitioner's Team Meeting with Olsen in June 2016, the BOP removed "Plaintiff's Management Variable"[3] and requested to have Plaintiff transferred to FCI Fort Dix Camp Facility but failed to correct the PSR. (Id., ¶27.) One week later, Olsen placed a Public Safety Factor[4] ("PSF") on Petitioner and increased his severity level to "max.," precluding his transfer to a camp facility. (Id., ¶28.)

Petitioner met with Mr. Olsen and Case Manager Ms. Willis to discuss his informal remedy request on February 23, 2017. (Id., ¶29.) Petitioner presented the exculpatory evidence regarding his PSR, which he had notified Olsen of in November 2015. (Id., ¶¶30-31.)

Due to the alleged inaccuracies in the PSR, the BOP determined that Petitioner required a low security level placement, which prevented him from receiving camp custody or home confinement with treatment in the D.C. veteran's program.

---

[3] "A Management Variable is required when placement has been made and/or maintained at an institution level inconsistent with the inmate's scored security level." BOP P.S. 5100.08, Ch. 5 at 1.

[4] "A Public Safety Factor (PSF) is relevant factual information regarding the inmate's current offense, sentence, criminal history or institutional behavior that requires additional security measures be employed to ensure the safety and protection of the public." Id. at 7.

(Id., ¶¶7C, 19, 35.) Petitioner also asserts the BOP violated the Privacy Act, 5 U.S.C. §§ 552a(d),(e)(5) and (g), by failing to keep an accurate PSR Report, contained in his Privacy/Case file. (Id., ¶¶12-15.)

II. DISCUSSION

28 U.S.C. § 2241 provides, in relevant part:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions . . .
>
> (c) The writ of habeas corpus shall not extend to a prisoner unless—
>
> . . .
>
> (3) He is in custody in violation of the Constitution or laws or treaties of the United States; . . .

Damages are not available in a habeas proceeding under 28 U.S.C. § 2241. See Descamps v. Warden Lewisburg, USP, 617 F. App'x 110, 111 (3d Cir. 2015) (per curiam) (the proper means for seeking damages or injunctive relief is a civil rights action). If Petitioner wishes to seek damages for a constitutional violation, he must file a separate civil rights action under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,[5] 403 U.S. 388 (1971).

---

[5] Jurisdiction is improper under 42 U.S.C. § 1983 because the alleged defendants are not state actors, they are federal actors. See Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d

A. The Privacy Act

"The Privacy Act [5 U.S.C. § 552a *et seq.*] 'governs the government's collection and dissemination of information and maintenance of its records [and] generally allows individuals to gain access to government records on them and to request correction of inaccurate records.'" Kates v. King, 487 F. App'x 704, 706 (3d Cir. 2012) (quoting Perry v. Bureau of Prisons, 371 F.3d 1304, 1304–05 (11th Cir. 2004) (quoting Gowan v. United States Dep't of the Air Force, 148 F.3d 1182, 1187 (10th Cir. 1998). An individual may bring a civil action against the agency when it fails to comply with any provision of the statute. Id. (citing 5 U.S.C. § 552a(g)(1).)

> [T]he BOP has exempted its central record system, where an inmate's PSI is located, from the Act's relevant enforcement provisions. *See* 28 C.F.R. § 16.97(a); *see also Fendler v. United States Bureau of Prisons*, 846 F.2d 550, 553–54 (9th Cir. 1988). Additionally, United States Probation Offices, because they are units of the federal courts, *see* 18 U.S.C. § 3602, are not subject to the Privacy Act. *See* 5 U.S.C. § 551(1)(B); *Washington Legal Found. v. United States Sentencing Comm'n*, 17 F.3d 1446, 1449 (D.C.Cir.1994).

Id. at 706. Therefore, Petitioner cannot challenge his custody under the Privacy Act, nor can he bring a civil action for damages.

---

Cir. 2001) (a Bivens action is the federal equivalent of a § 1983 action against state actors).

B. Due Process

A protected liberty interest under the Fourteenth Amendment may arise from the Constitution or it may be created by law or regulation. Williams v. Sec. Pennsylvania Dep't Corr., 848 F.3d 549, 558-59 (3d Cir. 2017). "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" Id. at 559 (quoting Griffin v. Vaughn, 112 F.3d 703, 708 (3d Cir. 1997) (emphasis added) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). "[Neither BOP policy nor the Due Process Clause gives a prisoner a liberty interest in a particular housing location or custody level while under the jurisdiction of correctional authorities." Mundo-Violante, 654 F. App'x 49, 51 (3d Cir. 2016) (citations omitted); Briley v. Att. Gen. U.S., 632 F. App'x 84, 85 (3d Cir. 2016) (noting that inmates have no constitutional right to a particular security classification). Therefore, Petitioner does not state a cognizable Due Process claim that he was deprived of transfer to a camp, based on violation of BOP Program Statement 5800.17(11)(c), failing to assist him with a request to the U.S. Probation Office to change his PSR.

C. The Second Chance Act

7

Petitioner seeks relief of home confinement. In the petition, he alleges:

> "The BOP Program Statement P5310.17 Psychology Services Manual state[s] "Branch is responsible for provision of community-based treatment services for inmates transitioning through Residential Reentry Centers and Home Confinement; the Veteran's "Healthcare for Reentry Veterans Program" (HCRV) provides that for the Plaintiff"

(Pet., ¶16.) Petitioner attached his eligibility letter for "Healthcare Reentry Veterans Program." (Pet., ECF No. 1-3 at 24.) The letter states, in part:

> As Mr. Briley enters 8 months and less on his current sentence, he can further be assisted by the Healthcare For Reentry Veterans (HCRV) Program. This program provides educational support for veterans who are getting ready to be released back into the community. Also, a reentry plan will be generated as services do not begin until Mr. Briley's actual release from custody.

(Id.) The Court notes Petitioner's projected release date is December 31, 2018. (Pet., ECF No. 1-3 at 33.) He has more than eight months remaining on his current sentence.

The Second Chance Act, 18 U.S.C. § 3624(c), provides:

> (c) Prerelease custody.--
>
> > (1) In general.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that

8

> prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

"The Second Chance Act of 2007 . . . increases a federal prisoner's eligibility for pre-release placement in a halfway house from 6 to 12 months, and requires the Bureau of Prisons to make an individual determination that ensures that the placement is 'of sufficient duration to provide the greatest likelihood of successful reintegration into the community.'" <u>Wilson v. Strada</u>, 474 F. App'x 46, 46-47 (3d Cir. 2012) (quoting 18 U.S.C. § 3624(c)(6)(C)). 28 C.F.R. § 570.22 provides:

> Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part.

Attached to the petition is an "Inmate Request to Staff Response" dated December 4, 2016. (Pet., ECF No. 1-3 at 33.) The response states:

> This is in response to your Inmate Request to Staff, dated November 23, 2016.

9

> Specifically, you request a recommendation for an early release to home confinement in order to participate in the Veterans Justice Outreach Program.
>
> A review of this matter reveals you have a projected release date of December 31, 2018, via Good Conduct Time Release. Pursuant to the "Second Chance of 2007", Unit Team staff is to review each inmate for pre-release Residential Reentry Center/Home Confinement placement 17-19 months before the inmate's projected release date. Based on the time frames given in the "Second Chance Act of 2007," you are currently not in the time frame to be reviewed for home confinement placement. Your Unit Team will continue to monitor this matter during your scheduled program reviews.

(Id.)

This exhibit, attached to the petition, establishes that Petitioner's request for pre-release home confinement (or residential reentry center placement) was premature, and that consideration of his request was only delayed, not denied based on his PSR. 18 U.S.C. § 3624(c) requires only that inmates are given consideration, under the factors described in § 3621(b), to serve a maximum of twelve months of their prison terms in a community correctional facility or a maximum of six months or ten percent of the term, whichever is shorter, in home confinement.

The BOP's decision not to consider Petitioner's request until 17 to 19 months before his projected release date does not preclude compliance with the statute. See Sacora v. Thomas, 628

F.3d 1059, 1067-68 (9th Cir. 2010) ("after the April 14 [2008 BOP] Memorandum each inmate's pre-release placement review was to take place somewhere between 17 and 19 months before the inmate's release, instead of the 11 to 13 months provided for in Program Statement 7310.04. . . . This change affords each inmate the opportunity to be placed in a RRC for the full 12 months the statute authorizes . . .") Therefore, Petitioner is not entitled to habeas relief based on the BOP's response to his request for residential reentry center placement or home confinement.

III. CONCLUSION

For the reasons discussed above, the Court dismisses Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241.

An appropriate Order follows.

s/Renée Marie Bumb
**Renée Marie Bumb**
**United States District Judge**

Dated: April 27, 2017